Good morning. May it please the Court, Kara Hartzler on behalf of Mr. Gomez-Reyes. In this illegal reentry case, there's two reasons that Mr. Gomez-Reyes's underlying removal order was invalid. First, his conviction was not an aggravated felony. And second, he was ordered removed before he was served with the notice of those same removal proceedings. I'll start with the aggravated felony issue. Everyone agrees that under Borden, an offense with a mens rea of recklessness cannot be a crime of violence. So to decide whether a particular state statute has a mens rea of recklessness, we look to state law. And here there is an on-point Illinois Supreme Court decision in the case of Sims that says recklessness is encompassed in this offense. That resolves the mens rea issue. Well, maybe that would resolve the mens rea issue as to the underlying offense, but this is an attempt. And you can't attempt to do something recklessly because an attempt requires the specific intent to commit the offense. So if we take the attempt analysis, then what happens is we have to add on the attempt element of a substantial step. And then that substantial step element is what renders the statute overbroad. And that's exactly what the Supreme Court did in Taylor several years ago. It basically considered attempted Hobbs Act robbery. And it said that if you have an attempt to commit the use of the, you know, threatened use or attempted use of force, then that isn't satisfied by a situation where a person, for instance, walks into a bank, has a note in their pocket, but doesn't actually deliver the note. That's not the attempted threat of force. And as a result, we have numerous cases we've cited to in Illinois where you can have that same situation, a person is convicted of an attempt to commit this statute by simply crossing the threshold and never actually attempting to threaten force or anything along those lines. So Taylor is what takes this out of the attempt context and prevents that from rendering the statute a categorical match. So just to be clear on the facts you're supposing. So it's, he has to have a weapon, right? Because that's what makes him a victim. That's the aggravating factor. And what he's attempting to do is not use force, but threaten the use of force to accomplish sexual penetration. And he takes some substantial step, like traveling towards where the victim is, and he's interrupted before he makes a threat, like I said. And what are the, because I know you've cited a number in Illinois cases, but it was, I think a lot of them are actually under a different part of the statute. So what are the ones that you think read this version of the statute to say that conduct like that? So Hawkins' case that didn't have the aggravating factor, but it was attempted criminal sexual assault. And that was a case where a person actually walked across the threshold, you know, walked into a person's room, basically got into bed, said, you know, I'd like to kick it with you, but never actually threatened the victim. So that was very similar to the hypothetical we're talking about in Taylor, where you didn't actually have an attempted threat. So another case, which was actually the exact statute here, attempted aggravated criminal sexual assault, and that was Grappler. And in that case what happened is the Illinois court said that when the person actually entered the basement, that was a substantial step that would have satisfied the, and would have been sufficient for that exact crime that we have here. They also said that another substantial step in that case would have been that the person actually had a rope that could have been used to threaten the victim. So basically Hawkins and Grappler are, I think, the two on-point cases that we would cite to showing a realistic probability that the exact type of conduct that took place in Taylor also is possible here. But the defendant does still have to intend, whether through force or the threat of force, to achieve sexual penetration, which, why isn't that itself force? I mean, I understand your point that Johnson says it has to be violent force, but this seems different from the kind of very simple battery that you had in Johnson. Why shouldn't we consider this to be violent? So if we're shifting, because I think we've got our mens rea argument, and then I think Your Honor is referring to the alternate de minimis force argument. Essentially what Illinois cases have cited over and over, and we've cited numerous ones in our brief, is that you don't have to have any victim resistance to commit this type of offense under Illinois law. The victim doesn't have to be injured, you don't have to have resistance, and that's what takes this out of the Supreme Court's decision in Stokely, which the government relies on. Stokely specifically said that when you have a statute where the victim does have to have even a small amount of resistance, that's the use of force. But Stokely specifically created an exception and said that when you don't have, when you have a statute that doesn't require any victim resistance, that's not a crime of violence. And that's exactly what this Illinois statute has in numerous cases that Illinois has had. So I would also say that we believe that Valdivia Flores controls in terms of whether there's prejudice, whether the other prongs of D1 and D2 have been satisfied. And if the Court has no further questions, I'll save the remainder of my time. Thank you. Thank you. Good night. Mr. Zipp. May it please the Court, Daniel Zipp on behalf of the United States. Your Honor, starting with the recklessness argument, the case in Sims doesn't go as far as the defense would like it to. The Supreme Court has held in Keeple v. Turell that there is an implicit mens rea in the statute, given what it requires, that requires intent or knowledge. And the Court has specifically said, the Court of Appeals has said, that recklessness is irrelevant to the analysis as to this particular statute. All Sims said was that it wasn't ineffective assistance in a death penalty case for the defense counsel not to request a specific mens rea jury instruction. But that's consistent with what the Supreme Court had earlier held, which is that the mens rea is implicit in the statute. And as Your Honor noted, even if recklessness was conceivably possible to the statute itself, he was convicted of attempt, which under Grisias Ulibarri necessarily requires the mens rea. That would make it fall within the generic definition. What's your answer to the analogy to Taylor and the Hobbs Act? It seems like you could have an attempt to threaten, which in Taylor the Court said wasn't enough, and that seems to be a possibility under this statute too. Right. I think the key distinction is in Taylor the Court was dealing with a federal statute, and because of that it wasn't applying Duenas-Alvarez, and it was essentially using its legal imagination to come up with this sort of hypothetical about having a bank note, not actually intending to use force, but getting stopped before you threaten force with a note. You could make that same analogy to this case and suggest that someone might want to commit a rape with a note, but then get stopped before they get the note. But the fact is there's no cases that actually have that fact pattern. And as this Court made clear in Duenas, or the Supreme Court made clear in Duenas-Alvarez, you'd have to show a specific fact applying the law in the non-generic fashion that you're proposing. The cases, as Your Honor noted, many of the cases that defense counsel cites involve different subsections of the statute, specifically the Hawkins case, which the defendant climbed into bed with the victim and said, let's kick it, and he took off his shoes. That dealt with a subsection for sexual assault without consent, and that victim, that defendant had just committed the same offense against a different woman by essentially raping her while she was sleeping. He then went into a different house, got into bed, took off his shoes, and the Court held that that was substantial steps towards non-consensual sex. But the Court, that doesn't apply, that's a different subsection, and here we're dealing with the sexual assault by force or threat of force. And for that, in Montefalco, the courts of Illinois, they felt that you have to commit a substantial step towards the act of penetration by force. So that requirement sort of sets this aside from whatever hypothetical non-force scenario the Court was dealing with. And do you read that case to say that a substantial step towards penetration by threat of force would not constitute an attempt in Illinois? No, I'm not sure that the Court reached that issue. In that case, the defendant broke into a home, put the woman in a headlock, and asked her to take off her underwear, and the Court held even that wasn't a substantial step towards the act of penetration. And then the Court sort of moved back from that in Greyfoot, and affirmed in a case where the defendant also broke into a house, but in that case he, again, held the defendant down, grabbed her buttocks, said that he found her sexually attractive. These are all sort of substantial steps towards the act of penetration by force that takes this sort of outside the hypothetical world of Johnson. Going back to your invocation of Duenas-Alvarez, do you think it matters that Duenas-Alvarez was about whether you had a categorical match with one of the federal generic offenses? And here we're talking about the elements clause. And we said in Grisel that when, or at least we made a decision in Grisel to say that when the text of the statute, the text of the state statute, defines the elements in a way that don't match the federal elements, then we don't need to look for a case from the state. We can just say that there's not a categorical match. So what's your answer to that? Well, I think in this case the two statutes on their face do match each other. I mean, the Illinois statute requires an act of sexual penetration committed by the use of force or threat of force without the victim's consent, and that perfectly matches up with the 16B definition, an offense that has the element used or attempted or threatened use of physical force against the person or another. So there's not really any daylight between the two. But it doesn't match when you add an attempt, right? Because you can, under the state statute, you can attempt to have a threat of force, and what the federal statute requires is the use, attempted use, or threatened use of force, but not attempted threat. And that's exactly the distinction that was the basis for the decision in Taylor. And it seems like you have the same gap here, that the attempts to threaten are covered by state law but don't satisfy the elements clause of federal law. Oh, because it says attempted use of physical force, not attempted. Yeah, I believe that was the basis for Taylor, wasn't it? Again, I don't know that this Court has applied, has taken Duenas-Alvarez out of, sort of declined to apply Duenas-Alvarez in that context. In Eckford, it specifically said that Taylor did not overrule Duenas-Alvarez. So I think I'm not aware of a case where this Court has held that Duenas-Alvarez no longer applies in that context. But even, I guess, even if this Court were to find that Duenas-Alvarez doesn't apply, that the attempt aspect of this case makes the statute overbroad, our argument would be that none of that matters because the defendant wasn't prejudiced, even if he wasn't as classified as an aggravated felon in this case. And for several reasons, one of which he had two other felony convictions that are not contested, were also aggravated felonies. And he had entered the country without permission. He had limited ties to the country. And he had just committed these series of horrific rapes. It's simply not plausible that he would have had relief from removal, even if he had not been misclassified as an aggravated felon. Happy to answer additional questions. The original proceedings were several years previous. Is that correct? Which proceedings? When he was deported, he did not, he waived his rights at that time. Is that correct? Yes. At the time of deportation, he specifically signed a form that said, I waive my right to judicial review, which is another reason that this court could affirm in this case without even reaching the question of whether this statute is, in fact, an aggravated felony. But in any event, he would have to show prejudice. Correct. Okay. Thank you. Thank you. I'd like to go to the question of waiver that Your Honor just brought up. And I think really what is important to look at is this court's recent decision in Valdivia Soto, because that involved the exact same question of was the person, did the person waive their administrative remedies and judicial review. And in Valdivia Soto, they said no. There was no intelligent waiver because what happened is that there was a mistranslation. Here, we have something much, much worse. None of the form was translated. It's undisputed that he spoke Spanish. It's undisputed that the officer spoke very bad Spanish. In fact, the officer told him this was a voluntary deportation, not a removal. And the officer didn't translate any of the information regarding administrative remedies or judicial review. So under Valdivia Soto, there's just no way that there was a knowing and intelligent waiver here. Going to, then, the issue of prejudice. The government has said that you can basically rely on these other convictions that he allegedly had that were not charged by the immigration officer. And to do that would be to basically rewrite history and go back and say, well, no, he didn't have to actually allege and prove that these convictions were actually in the record here. Is there a dispute about that? Did you question that he does, in fact, have those other convictions? Well, Your Honor, I think, first of all, it wasn't proven below. But even if it was proven that he did have these convictions, there was no, you know, this court has held in Martinez-Hernandez that what you can do is you can use one conviction to satisfy various legal definitions. But this court has never held that you can just rewrite history by swapping in a completely different conviction. It would be like saying to a jury, well, you know, yeah, I know that he was charged with robbery, but you've heard all the evidence about that, but let's just pretend that he had a conviction for burglary instead. It's not the kind of thing that you can rely on for prejudice under this court's precedent. And Martinez-Hernandez was very specific that it was relying on the fact that it was the same conviction, not a different conviction. Going to the issue of Terrell and Sims, I want to read specifically from Sims because Sims came out 11 years after Terrell. And Sims says, in People v. Terrell, this court held that the legislature did not intend the aggravated criminal sexual assault statute, the exact same statute here, to define a strict liability or public welfare offense. In other words, the issue in Terrell was whether the statute was strict liability, not whether it included recklessness. And then Sims went on and said, since the aggravated criminal sexual assault statute does not prescribe a mental state applicable to the offense, a mental state of intent, knowledge, or recklessness must be implied. And then it cites Terrell. And then there is also a decision just this last year from another Illinois appellate court where it said that in Sims, our Supreme Court explicitly interpreted Terrell to apply a mental state of intent, knowledge, or recklessness to the aggravated criminal sexual assault statute. In other words, Sims has held on its face and in subsequent precedent that Terrell is not controlling in terms of whether recklessness was included because that wasn't the question in Terrell. That's the question that Sims decided. And then I think with my last just couple of segments, I will point out that we have satisfied a realistic probability. As Your Honor pointed out, under Grisell, basically as long as the statute is overbroad on its terms on the face of the statute, that's enough. And essentially what we have here is an Illinois statute that says it can be violated by recklessness, intent, or knowledge. That alone satisfies the realistic probability. But even if it didn't, we pointed to the decisions in Hawkins and Grappler. And although I will agree with the government that Hawkins had a slightly different subsection that wasn't material, and Grappler had the exact same subsections as we are dealing with here. Thank you, counsel. We thank both counsel for their arguments. The case is submitted.
judges: SCHROEDER, MILLER, DESAI